UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES W. RILEY,                           :
                                          :
        Petitioner,                       :CIVIL ACTION NO. 3:00-CV-1183
                                          :
    v.                                    :(JUDGE CONABOY)
                                          :(Magistrate Judge Schwab)
ROBERT W. MYERS, et al.,                  :
                                          :
        Respondents.                      :

---

**MEMORANDUM**

Petitioner, James W. Riley's, Independent Action for Relief from Final Order, or Alternatively, Motion for Relief from Final Order Pursuant to Fed. R. Civ. Proc. 60(b) (Doc. 19) is pending before the Court. With this filing, Petitioner seeks review of the Court's previous decisions denying habeas relief. (*Id.*) He asserts that *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), and *Satterfield v. District Attorney of Philadelphia*, 872 F.3d 152 (2017), require a different outcome and his claims for ineffective assistance of counsel should be reviewed on the merits based on his showing of actual innocence. (*Id.*) The Court disagrees for the reasons discussed below.

### I. Background

In February 1993, Petitioner was convicted by a jury of first degree murder in the July 1991 shooting death of his stepdaughter. (Doc. 12 at 4; Doc. 15 at 2.) On August 11, 1993, he was sentenced to life imprisonment. (Doc. 12 at 4.) At trial, Petitioner requested but was refused a jury instruction as to voluntary

intoxication. (Doc. 12 at 4.) Following direct appeal to the Pennsylvania Superior Court, the conviction was vacated and the matter was remanded for a new trial. (Doc. 12 at 4; Doc. 15 at 2.) Petitioner asserts the Superior Court's decision was based on the determination that sufficient evidence was presented to merit Petitioner's requested jury instruction of voluntary intoxication. (Doc. 12 at 4.) Petitioner's new trial was held in February 1996. (*Id.*) On March 1, 1996, a jury again convicted Petitioner of first degree murder and Petitioner was sentenced to life imprisonment. (*Id.*) Petitioner filed a direct appeal with the Pennsylvania Superior Court raising the issue that the voluntary intoxication jury instruction was in error. (*Id.*) By decision dated October 21, 1996, and filed on December 1, 1996, Petitioner's conviction and sentence were affirmed by the Pennsylvania Superior Court. (Doc. 15 at 2.) No allowance of appeal to the Pennsylvania Supreme Court was filed, and no PCRA action was filed. (Doc. 17 at 2-3.)

Petitioner filed the 28 U.S.C. § 2254 at issue here on June 30, 2000. (Doc. 1.) Petitioner identified four grounds for relief: 1) his conviction was obtained by a violation of the protection against double jeopardy; 2) he was denied effective assistance of counsel; 3) he was denied the right to appeal; and 4) he was denied access to the courts. (Doc. 1 at 4-5.) He acknowledged that none of the claims had been previously presented in any other court. (Doc. 1 at 5.) While difficult to parse,

2

Petitioner seemed to indicate in his supporting Memorandum of Law that the violation of his constitutional rights was grounded in the performance of trial counsel and the prosecutor related to the voluntary intoxication defense. (*See* Doc. 1 at 9.) A Report and Recommendation dated August 11, 2000, recommended that the Court deem the petition withdrawn based on Petitioner's response to the Order which directed him to inform the Court whether he wanted to proceed with his Petition as filed or withdraw it and file an all inclusive petition within one year. (Docs. 5-7.) By Memorandum and Order of September 22, 2000, the Court adopted the Report and Recommendation and deemed the petition withdrawn. (Doc. 8 at 3.)

On May 3, 2002, Petitioner filed another 28 U.S.C. § 2254 petition related to his 1993 first degree murder conviction. (Doc. 1. Civ. A. No. 3:02-CV-750.) Among his claims, Petitioner asserted ineffective assistance of counsel regarding the defenses presented, including intoxication, and failure to preserve and raise the issue of legal, factual or actual innocence based on his lack of intent. (Doc. 1 at 20-29, Civ. A. No. 3:02-CV-750.) Petitioner provided factual averments not contained in his previous petition, pointing to trial counsel's failure to interview essential witnesses and elicit testimony on the issue of intent at trial. (*Id.*) In support of these claims, Petitioner identified evidence presented at trial about his intoxication at the time of the incident and the period of time leading up to it,

3

evidence about his general behavior, and expert reports related to the issues. (*Id.* at 21-24, 26.) The Report and Recommendation filed on September 11, 2002, concluded that the petition was barred by the AEDPA's statute of limitations. (Doc. 24, Civ. A. No. 3:02-CV-750.) After considering equitable tolling principles and related matters, the Court concluded the May 3, 2002, Petition was barred by the applicable statute of limitations provisions of 28 U.S.C. § 2244(d). (Doc. 31.) Petitioner appealed the decision to the Third Circuit Court of Appeals (Docs. 34, 35, Civ. A. No. 3:02-CV-750 (Appellate Docket number 02-4530).) By Order of June 20, 2003, the Circuit Court denied Petitioner's request for a certificate of appealability, concluding that Petitioner's June 2002 action was barred by the statue of limitations found in 28 U.S.C. § 2244(d) and equitable tolling did not apply. *See* Third Circuit Court of Appeals No. 02-4530 June 20, 2003, Docket Entry. The Order added that

> [a]ppellant had until 1/16/98 to file a timely Section 2254 petition. His petition was dated 5/3/02. Because appellant shows neither that he diligently pursued his claims nor that he was prevented in some extraordinary way from doing so, there are no grounds for equitable tolling. Appellant's assertion that he lacked access to his complete trial record, without more, does not justify equitable tolling.

(*Id.* (citations omitted).) A petition for a writ of certiorari in the United States Supreme Court was docketed on August 21, 2003, at No. 03-5999. (Doc. 40.) By Order of October 3, 2003, the

4

Court denied the petition for a writ of certiorari. (*See* Doc. 41.)

On September 10, 2004, Petitioner filed another 28 U.S.C. § 2254 petition asserting error related to his 1993 conviction. (Doc. 1, Civ. A. No. 3:04-CV-2008.) In support of his claim that there was insufficient evidence to convict him of first degree murder, Petitioner asserted that "[e]vidence, including defendant's confession and witnesses, identification of Appellant as shooter was sufficient to support voluntary or involuntary manslaughter on the ground of voluntary intoxication, conviction and not first degree murder." (Doc. 1 at 31, Civ. A. No. 3:04-CV-2008.) In support of his ineffective assistance of counsel claim, Petitioner asserts that "[i]f counsel had called witnesses to testify in Appellant's defense, there is reasonable probability that he would have been acquitted of voluntary or involuntary manslaughter." (*Id.* at 35-36.) The Magistrate Judge's September 30, 2004, Report and Recommendation determined that the filing was a second or successive petition which should be dismissed and Petitioner could move in the Third Circuit for leave to file a successive petition. (Doc. 6 at 4, Civ. A. No. 3:04-CV-2008.) The Court adopted the Report and Recommendation by Order of October 21, 2004. (Doc. 8, Civ. A. No. 3:04-CV-2008.)

Over two years after the Court issued the closing Order in Civ. A. No. 3:04-CV-2008, Petitioner filed the Petition for Relief

5

in Accordance to F.R.C.P. Rule 60(b)(6) in case number 3:00-CV-1183. (Doc. 9) The May 3, 2007, filing was accompanied by a brief in support (Doc. 10) in which Plaintiff asserts that the District Court should have held a hearing before taking action on his petition. (*See* Doc. 10 at 1.) Plaintiff further averred that

> [t]rial counsel failed to call important character witnesses--the bartender and barmaid at Kates bar in Mercersburg, PA--whom witnesses the amount and length of time petitioner was inebriated, in order to substantiate his claim of diminished capacity. Moreover, as at the penalty phase, trial counsel failed to call--Major Tommy Keefer, Robert Brindle, and Robert Hoffman-- all of whom trial counsel new [sic] as character witnesses that would demonstrate petitioner's character under normal circumstances. The former allegations testimony was critical to the defense because in order to convict the petitioner with the requisite "intent" he would have to have his full faculties at the time of the charged crime.
>
> Certainly, there could be no reasonable basis for omitting this evidence when trial counsel was asserting a diminished capacity defense. This testimony would have demonstrated that petitioner could have not had the for-thought or required intent for first degree murder. The latter would have demonstrated petitioner [sic] impeccable character in normal circumstances, in order to demonstrate the mitigating circumstances for sentencing purpose, as well as supporting his diminished capacity defense.

(Doc. 10 at 3.) On May 18, 2007, the Court denied Petitioner's Rule 60(b)(6) motion on the basis that it was not filed within a reasonable time of the September 22, 2000, Order (Doc. 8) from

6

which it sought relief.  (Doc. 11.)

Over six years passed before Petitioner filed another document in the above-captioned matter.  On January 1, 2014, Petitioner filed the "Motion Requesting to Vacate Judgment Entered on September 22nd, 2000, Due to Exceptional Circumstances in the Discovery of Previous Unavailable Evidence and an Intervening Change in Controlling Law Pertaining to Petitioner's First Timely Filed Habeas Petition Pursuant to Federal Rules of Civil Procedure 60(b)(2) and 60(b)(6) Providing Extraordinary Relief."  (Doc. 12.) With this motion, Petitioner's focus was counsel's error in not asserting on direct appeal that the trial court erred in permitting Petitioner's wife to testify against him, alleging that this was a violation of Pa. C.S. § 5913(4) which addresses spousal privilege.  (Doc. 12 at 5.)  He submitted an affidavit from his wife, Connie Riley, alleging that it stated "she did not want to testify at Petitioner's trial but that she was forced to do so by the Commonwealth."  (*Id.*; *see* Doc. 12 at 19.)  Petitioner stated that "due to trial and direct appellate counsel's dereliction in not investigating and/or presenting the Affidavit" he was denied "his right to due process of law and ineffective assistance of counsel."  (*Id.* at 8.)  Petitioner submitted that, pursuant to *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005), recent Supreme Court cases presented "new evidence" for Rule 60 purposes which supported district court review of his June 2000 habeas petition:

7

*Trevino v. Thaler*, 569 U.S. 413 (2013), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013). (Doc. 12 at 9.) Petitioner referred to his wife's Affidavit, which is dated September 3, 1993, (*see* Doc. 12 at 19) as his "newly discovered evidence affidavit" and asserted that trial/appellate counsel "rendered ineffective assistance of counsel for their failure" to present it. (Doc. 12 at 10.) Finally, Petitioner concluded that "relief from operation of judgment is warranted" because he "demonstrated the miscarriage of justice that transpired in his case, actual innocence to the crimes charged absent the intent ingredient to have established a charge of first degree murder which will be demonstrated in the award of an evidentiary hearing." (Doc. 12 at 12.)

Finding Petitioner failed to demonstrate that exceptional circumstances warranted an excusal for his lengthy delay in filing the motion, Magistrate Judge Susan Schwab recommended that the motion be denied in her March 7, 2014, Report and Recommendation. (Doc. 15 at 8-11.) She found that the Supreme Court decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thayler*, 569 U.S. 413 (2013), were "clearly inapposite" and a Rule 60(b) motion in the circumstances was improper under *Gonzalez,* 545 U.S. at 533-34, because Petitioner's motion was "nothing more than an attack on the underlying criminal judgment, not some defect in the integrity of this Court's previous Order." (Doc. 15 at 12 (citing *Turner v. Dragovich*, 163 F. App'x 97 (3d Cir. 2006)).) Petitioner

8

objected to the Report and Recommendation on several grounds, including that the Magistrate Judge did not address his "actual innocence equitable tolling claim" which was based on *McQuiggin*. (Doc. 16 at 6.)

The Court's subsequent May 1, 2014, Memorandum included extensive discussion of Petitioner's claim that the Court should find his motion timely filed and consider his actual innocence claim pursuant to *McQuiggin*. (Doc. 17 at 15-21.) The Court concluded that Petitioner had not adequately presented a gateway claim of actual innocence and, therefore, his motion under Rule 60(b) was properly denied. (*Id.* at 21.)

Over three years elapsed before Petitioner filed the motion under consideration here on November 16, 2017. (Doc. 19.) On the same date he filed Petitioner's Motion for the Appointment of Habeas Corpus Counsel under The Criminal Justice Act 18 U.S.C. § 3006(A). (Doc. 20.)

## II. Discussion

With his current filing, Petitioner asserts that he has been diligently pursuing collateral, state, and federal remedies "to gain redress of his substantial Constitutional violations which resulted in the conviction and detention of a man who is actually innocent of the crimes for which Petitioner was charged, arrested, convicted and ultimately sentenced to a term of life imprisonment." (Doc. 19 at 7.) As noted above, Petitioner relies

9

on *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), and *Satterfield v. District Attorney of Philadelphia*, 872 F.3d 152 (2017), to support his assertion that his claims for ineffective assistance of counsel should be reviewed on the merits based on his showing of actual innocence. (*Id.* at 2, 8.)

In *McQuiggin*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations [in the context of 28 U.S.C. § 2244(d)(1)(D)]." *McQuiggin*, 569 U.S. at 386 (citing *Schlup v. Delo*, 513 U.S. 208 (1995); *House v. Bell*, 547 U.S. 518 (2006)). The Court cautioned that "tenable actual-innocence gateway pleas are rare: [A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup*, 513 U.S. at 538; citing *House* (emphasizing that the Schlup standard is "demanding" and seldom met)).

*Satterfield* considered "whether the change in decisional law borne by *McQuiggin* may properly serve as the basis of a Rule 60(b)(6) motion." 872 F.3d at 160. Explaining that Rule 60(b)(6) provides litigants with a mechanism by which they may obtain relief from a final judgment "'under a limited set of

10

circumstances including fraud, mistake, and newly discovered evidence,'" *id.* at 158 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005), the Circuit Court specifically considered the petitioner's reliance on Rule 60(b)(6), "a catch-all provision extending beyond the listed circumstances to 'any other reason that justifies relief,'" *id.* (quoting Fed. R. Civ. P. 60(b)(6)). *Satterfield* added that

> [d]espite the open-ended nature of the provision, a district court may only grant relief under Rule 60(b)(6) in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Cox*, 757 F.3d at 120 . . . . This is a difficult standard to meet, and "[s]uch circumstances will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535.

872 F.3d at 158.

In general, "[p]recedent makes clear that changes in decisional law 'rarely' constitute "extraordinary circumstances' for purpose of Rule 60(b)," 872 F.3d at 160 (quoting *Cox v. Horn*, (3d Cir. 2014)), but Supreme Court precedent "leaves open the possibility that a change in law may--when accompanied by appropriate equitable circumstances--support Rule 60(b)(6) relief," 872 F.3d at 161 (citing *Gonzalez*, 545 U.S. 524; *Cox*, 757 F.3d at 121-22). *Satterfield* confirmed that *McQuiggin* was properly characterized as effecting a change in decisional law. *Id.* at 159. Rather than impose a *per se* or bright-line rule, the Circuit Court adhered to a "'case-dependent analysis' rooted in

11

equity,'" *id.*, (quoting *Cox*, 757 F.3d at 124), which "manifests as a 'flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case,' even where the proffered ground for relief is a post-judgment change in the law," *id.* (quoting *Cox*, 757 F.3d at 122).

In this context, the Circuit Court opted for more analysis of the equitable circumstances at play in the petitioner's case. *Id.* at 162. *Satterfield* also instructed that "[w]henever a petitioner bases a Rule 60(b)(6) motion on a change in decisional law, the court should evaluate the nature of the change along with all of the equitable circumstances and clearly articulate the reasoning underlying its ultimate determination."[1] *Id.* Noting that the principles underlying *McQuiggin* "are fundamental to our system of government and important to the inquiry on remand," the Circuit Court stated that

> *McQuiggin* allows a petitioner who makes a
> credible showing of actual innocence to
> pursue his or her constitutional claims even
> in spite of the AEDPA's statute of
> limitations by utilizing the fundamental-
> miscarriage-of-justice exception--an
> exception "grounded in the 'equitable
> discretion' of habeas courts to see that
> federal constitutional errors do not result
> in the incarceration of innocent persons."

---

[1] *Satterfield* noted that equitable factors which the district court could consider include the severity of the underlying constitutional violation and whether the petitioner raises a colorable claim regarding the alleged constitutional violation. 872 F.3d at 163-64 (citing *Buck*, 137 S.Ct. at 777-79; *McQuiggin*, 133 S.Cr. at 1931; Schlup, 513 U.S. at 316-17).)

12

> *McQuiggin*, 133 S. Ct. 1931. Underlying the fundamental-miscarriage-of-justice exception is a "[s]ensitivity to the injustices of incarcerating an innocent individual," and the doctrine aims to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Id.* at 1032. For this reason, "'[i]n appropriate cases,' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L.Ed.2d 783 (1982)) (alteration in original).

*Satterfield*, 872 F.3d at 162. The Circuit Court further noted that it failed to see a set of circumstances where the change in law brought about by *McQuiggin* and a petitioner's adequate showing of actual innocence would not be sufficient to support Rule 60(b)(6) relief, adding that two factors of the Rule 60(b)(6) analysis recently identified by the Supreme Court--"the risks of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process"--would be implicated if actual innocence were not considered in the extraordinary circumstances context. *Id.* at 163 (quoting *Buck v. Davis*, ---U.S.---, 137 S.Ct. 759, 778 (2017)). Thus, assessing whether a petitioner makes a credible showing of actual innocence is the first step in district court's analysis, i.e., it is the threshold matter which determines whether *McQuiggin's* holding would be

13

applicable. *Id.* *Satterfield* explains that making such a showing is a "burdensome task that requires the petitioner to 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *McQuiggin*, 133 S.Ct at 1935).

As indicated in the background summary set out above, this Court reviewed Plaintiff's "actual innocence" claim post-*McQuiggin* and found it wanting in the May 1, 2014, Memorandum. (Doc. 17 at 16-21, n.3.) In that context, Petitioner pointed to Connie Riley's affidavit as the new evidence supporting his actual innocence claim and the Court explained why he had not made a sufficient showing to proceed. (*Id.*) In the filing at issue here, Petitioner again relies on the same evidence in urging the Court consider this an "extraordinary circumstance" which would allow consideration of the merits of his underlying claims. (*See*, *e.g.*, Doc. 19 at 13.) With his current argument, Petitioner does not seem to appreciate that, in the previous Memorandum, the Court proceeded with the *McQuiggin* analysis in the Rule 60(b) context and determined that Petitioner had not made the crucial showing of actual innocence. (Doc. 17 at Doc. 17 at 16-21 & n.3.) In other words, the Court assumed that Petitioner could *potentially* proceed under Rule 60(b) *if* he made the requisite actual innocence showing but denied his motion on the basis that he had not made the required gateway showing which would allow him to do so. (*Id.*)

14

The analysis included the assumption that the actual innocence test applied to a case where a petitioner argued he was responsible for a lesser degree of guilt. (Doc. 17 at 18 n.6 (citations omitted).) Importantly, with his current filing Petitioner adds nothing to demonstrate how Connie Riley's affidavit shows actual innocence of first degree murder because of voluntary intoxication.

While no basis for Rule 60(b)(6) relief is apparent in this motion, in an abundance of caution the Court has again reviewed the entire record to determine if Petitioner has made an adequate showing of actual innocence in any filing. Based on the principles underlying *McQuiggin* and *Satterfield*, the Court has taken a broad view of matters presented in all submissions and again concludes that Petitioner has not made the requisite credible showing of actual innocence.

As noted above, Plaintiff's 2002 habeas filing contained factual averments not contained in his 2000 filing, listing evidence presented at trial about his intoxication and referencing additional evidence which was not presented. (Doc. 1 at 21-24, 26, Civ. A. No. 3:02-CV-750.) Petitioner identified his wife's trial testimony regarding his intoxication and expert testimony on the subject (for both prosecution and defense). (*Id.*) His allegation that key witnesses were not called (*id.* at 21) is a claim he made in another Rule 60(b)(6) motion in this case where

15

he asserted that a bartender and barmaid would have supported his claim of diminished capacity and three others would have testified about his character in normal circumstances (Doc. 10 at 3). In no instance does Petitioner show how the evidence not presented would contradict or overwhelm trial evidence supporting the first degree murder conviction to the extent that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Satterfield*, 872 F.3d at 163 (quoting *McQuiggin*, 133 S.Ct at 1935). Nor does Petitioner address the legal standard discussed in the Pennsylvania Superior Court's consideration of the issue of intoxication where the Superior Court quoted the Trial Court's Rule 1925 Opinion concerning the admission of evidence which was deemed probative of the degree of Petitioner's intoxication. (*See* Doc. 10 at 20-21.)

Diminished capacity is an extremely limited defense; it must be established through expert testimony that the defendant was unable to formulate the specific intent to kill. *See*, *e.g.*, *Saranchak v. Beard*, 616 F.3d 292, 308 (3d Cir. 2010) (citing *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (Pa. 2003)). "The defense will be successful 'only if the evidence shows that the defendant was 'overwhelmed to the point of losing his faculties and sensibilities.'" *Id.* at 307 (quoting *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008)).

While Petitioner does not discuss this legal standard, a

16

previous filing indicates that he may misapprehend the required showing. As set out in the background section above, Petitioner stated in his November 2017 Rule 60(b) motion that "in order to convict the petitioner with the requisite 'intent' he would have to have his *full faculties* at the time of the charged crime." (Doc. 10 at 3 (emphasis added).) The legal standard does not require "full faculties," and faculties and sensibilities may be *diminished* due to intoxication without being "overwhelmed" as the standard requires. *Saranchak*, 616 F.3d at 307-08. Here the jury heard from Petitioner's wife who was present before and after the killing and from expert witnesses regarding intoxication. As previously discussed, Petitioner makes no attempt to show with specificity that evidence *not* presented at trial would negate evidence relied upon by the jury in the jury's finding that Petitioner was not overwhelmed to the point of losing his faculties and sensibilities. Petitioner's general averments are insufficient under *McQuiggin*, *Satterfield*, and all precedent explaining the heavy burden of establishing actual innocence in the fundamental miscarriage of justice context. To show that no jury would have convicted him of first degree murder because of diminished capacity based on voluntary intoxication, Petitioner must do far more than he has done here. Because Petitioner makes no more than conclusory statements regarding actual innocence, the Court concludes he has not come close to satisfying the "burdensome task" of persuading this Court that, "'in light of the

17

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Satterfield*, 872 F.3d at 163 (quoting *McQuiggin*, 133 S.Ct at 1935).

### III. Conclusion

For the reasons discussed above, Petitioner, James W. Riley's, Independent Action for Relief from Final Order, or Alternatively, Motion for Relief from Final Order Pursuant to Fed. R. Civ. Proc. 60(b) (Doc. 19) is DENIED. Because Petitioner has not come close to making the required threshold showing and the Court denied the motion after a thorough and generous review of the record in this case and similar habeas petition, the Court finds no basis to appoint counsel. Therefore, Petitioner's Motion for the Appointment of Habeas Corpus Counsel under The Criminal Justice Act 18 U.S.C. § 3006(A) (Doc. 20) is DENIED. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: May 1, 2018

18